IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ANGELA SANCHEZ,<br>　　Plaintiff,<br><br>v.<br><br>COMMISSIONER OF<br>SOCIAL SECURITY,<br>　　Defendant. | §<br>§<br>§<br>§　No. 3:11-CV-3117-BF<br>§<br>§<br>§<br>§ |

## MEMORANDUM OPINION AND ORDER

This is an appeal from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying the claim of Angelina Sanchez ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"). The Court considered Plaintiff's Brief, filed on February 16, 2012, Defendant's Brief, filed on February 29, 2012, and Plaintiff's Reply Brief, filed on March 8, 2012. The Court reviewed the record in connection with the pleadings. For the following reasons, the final decision of the Commissioner is **AFFIRMED**.

### Background[1]

### Procedural History

Plaintiff filed an application for Title II benefits on December 16, 2008, alleging a disability onset date of October 10, 2008, due to a work-related back injury. (Tr. 172.) This application was initially denied by the Commissioner, and again upon reconsideration. (Tr. 100, 108.) Plaintiff then requested a hearing, which was held on April 26, 2010, in front of an Administrative Law Judge

---

[1] The following background facts are taken from the transcript of the administrative proceedings, which is designated as "Tr."

("ALJ"). (Tr. 69, 111.) At the hearing, Plaintiff and a Vocational Expert ("VE") testified. *(Id.)* The ALJ issued an unfavorable decision on September 13, 2010, denying Plaintiff's application. (Tr. 69-77.) Plaintiff filed a timely request with the Appeals Council to review the ALJ's decision. (Tr. 65.) The Appeals Council declined Plaintiff's request for review on September 26, 2011. (Tr. 1.) Thus, the ALJ's decision became the final decision of the Commissioner, from which Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

### Plaintiff's Age, Education, and Work Experience

Plaintiff was born on May 29, 1960. (Tr. 82.) She was 48 years old on her alleged onset date and 49 years old at the time of the hearing. *(Id.)* Plaintiff completed school through the sixth grade in Mexico and does not read or write in English. *(Id.)*

Plaintiff worked as a hospital cleaner at Terrell State Hospital from 1990 until she filed an application for DIB on December 16, 2008, alleging disability since October 10, 2008. (Tr. 161-78, 198.) Since then, she has had no income. (Tr. 71.) As such, the ALJ found that Plaintiff's earnings were not high enough to meet the standard for substantial gainful activity. *(Id.)*

### Plaintiff's Medical Evidence

On May 5, 2007, before Plaintiff's alleged disability, Plaintiff sustained a work-related back injury. (Tr. 249.) In March of 2008, after 10 months of conservative treatment, Plaintiff sought treatment from Dr. Bidner at North Texas Orthopedics. (Tr. 259.) Upon examination, Dr. Bidner observed spasm, reduced flexibility, and tenderness, and prescribed narcotic pain medication and a muscle relaxant. *(Id.)* Additionally, Dr. Bidner completed a "Texas Workers' Compensation Work Status Report," stating Plaintiff could not kneel, squat, bend, stoop, push, pull, or climb. (Tr. 260.)

2

Dr. Bidner also instructed Plaintiff not to lift or carry objects weighing more than 10 pounds for more than four hours a day. *(Id.)*

In April of 2008, Plaintiff returned to Dr. Bidner for her follow-up appointment. (Tr. 257.) Upon assessing mechanical back strain and noting x-ray evidence of degenerative disc disease, Dr. Bidner referred Plaintiff to Dr. Wharton, a spinal specialist at Advanced Microsurgery, for evaluation and treatment. (Tr. 249, 267.)

On May 8, 2008, a year after Plaintiff sustained her back injury, Dr. Wharton examined Plaintiff. (Tr. 249.) Dr. Wharton found that Plaintiff had difficulty toe and heel walking, and had difficulty squatting. (Tr. 251.) Dr. Wharton also evaluated an MRI of Plaintiff's spine taken in May of 2007, finding a herniated disc, stenosis, and decreased space around the nerve root. (Tr. 252.) Dr. Wharton's impression of Plaintiff's injury was a herniated nucleus pulposus at the L4-L5 level with stenosis and radiculopathy. (Tr. 253.) Dr. Wharton recommended surgical stabilization of Plaintiff's lumbar spine. *(Id.)* Dr. Wharton informed Plaintiff that surgery would not make Plaintiff's back normal and that she would always have some restrictions on lifting; however, if successful, the surgery would "alleviate most if not all of her pain." *(Id.)* Dr. Wharton acknowledged that work accommodations for Plaintiff's lifting activities was "one of the concerns," but did not state that she would be unable to lift at all. *(Id.)*

On June 20, 2008, Plaintiff returned to Dr. Bidner complaining of "disabling low back pain with radicular symptoms." (Tr. 255.) Dr. Bidner's examination revealed no visible deformity of the lumbar spine. *(Id.)* However, Dr. Bidner did recognize decreased spinal flexibility and a slight decreased sensation to the L5 distribution. *(Id.)* Dr. Bidner noted that Plaintiff was a surgical candidate and referred Plaintiff to a spinal specialist at Orthopedic Associates for a second opinion.

*(Id.)*

On July 16, 2008, Dr. Ramnath at Orthopedic Associates found Plaintiff was positive for balance problems and sleep disturbance due to pain and swelling. (Tr. 268.) Dr. Ramnath's impression was that Plaintiff suffered from "severe back and leg pain secondary to severe degenerative disc disease and questionable spondylolisthesis at L3-4." (Tr. 269.) Pursuant to Dr. Ramnath's recommendation, Plaintiff had an MRI on July 24, 2008, which was compared to the MRI from 2007. (Tr. 263, 269, 270.) The MRI showed degenerative disc disease in Plaintiff's lumbar spine at L4-5, with disc bulging, stenosis, and encroachment on the neural foramina bilaterally. (Tr. 270.) Disc bulging and encroachment were also seen at the L3-4 level and the L5-S1 level. (Tr. 264.)

On July 30, 2008, Dr. Ramnath saw Plaintiff for a follow-up and to review her MRI. (Tr. 267.) Again, Dr. Ramnath's impression was "severe back and leg pain secondary to degenerative disc disease and bulging." *(Id.)* Dr. Ramnath noted that Plaintiff's pain continued despite conservative treatment. *(Id.)* Dr. Ramnath also recommended a discogram, but it was never scheduled. *(Id.)* A week later, Plaintiff returned with continued pain. *(Id.)* Dr. Ramnath restricted Plaintiff from lifting, bending, twisting, and prolonged standing. *(Id.)*

On October 8, 2008, Dr. Ramnath saw Plaintiff again, noting that her pain had remained unchanged. (Tr. 265.) On November 5, 2008, Dr. Ramnath again recommended a discogram which he indicated would be scheduled. (Tr. 262.) He also prescribed Ultram, an opioid pain medication. *(Id.)*

On January 23, 2009, Plaintiff underwent a spinal fusion at Integra Hospital. (Tr. 286.) Plaintiff was in the hospital for six days for surgery and recovery, and she was released with a prescription for narcotic painkillers and a handicap parking placard. (Tr. 275-77.)

On February 6, 2009, Dr. Frederick Cremona, M.D., a non-examining state agency medical consultant, assessed Plaintiff's residual functional capacity ("RFC"). (Tr. 289-95.) Dr. Cremona was of the opinion that Plaintiff had some exertional limitations, including an occasional lifting restriction of 20 pounds, a frequent lifting restriction of 10 pounds, and a durational limit of standing and sitting (with normal breaks) of six hours in an eight-hour workday. (Tr. 289-95.) Additionally, in the RFC, Dr. Cremona placed occasional postural limitations on Plaintiff's climbing a ladder, rope, or scaffold, or stooping and crouching, with all other postures being permitted frequently. *(Id.)* Dr. Cremona opined the limitations were not at listing level, and Plaintiff was "not expected to be disabl[ed] for more than 12 months." (Tr. 293.)

On March 13, 2009, Dr. Ramnath saw Plaintiff for a follow-up on her lumbar fusion. (Tr. 297.) Dr. Ramnath noted Plaintiff was doing "reasonably well" and, despite "still getting some discomfort going into her legs, [she] is slowly improving." *(Id.)* Dr. Ramnath planned to slowly discontinue Plaintiff's use of the brace and begin physical therapy. *(Id.)* Dr. Ramnath also refilled her pain medication. *(Id.)*

On May 15, 2009, Dr. Ramnath maintained Plaintiff was doing reasonably well post-surgically, even though she had more back pain. (Tr. 303.) He prescribed her an extended-release pain medication and continued her physical therapy. *(Id.)*

On August 4, 2009, Dr. Ukoha performed a consultative examination of Plaintiff at the Commissioner's request. (Tr. 304-07.) Dr. Ukoha noted Plaintiff was still suffering from pain after her surgery. (Tr. 305.) Dr. Ukoha also noted Plaintiff's straight leg raising test was positive bilaterally at only 20 degrees. *(Id.)* Dr. Ukoha also indicated Plaintiff had "mild difficulty" squatting, hopping, tandem walking, and toe walking. *(Id.)* Dr. Ukoha's impression was chronic nonspecific low back

pain and nonspecific radicular lumbar pain. *(Id.)*

On August 26, 2009, Dr. Leigh McCary, another non-examining state agency medical consultant, issued an RFC opinion. (Tr. 309-15.) Dr. McCary opined that Plaintiff would have occasional postural limitations in climbing, balancing, stooping, kneeling, crouching, and crawling. (Tr. 310.) The exertional limitations remained unchanged from Dr. Cremona's report. *(Id.)*

For the remainder of 2009, Ralph Meyer, D.C. ("Meyer"), oversaw Plaintiff's treatment in a work hardening program. (Tr. 323-60.) On December 16, 2009, Meyer opined Plaintiff was unable to return to work due to her chronic back pain. (Tr. 335.) Meyer prescribed ten sessions of a chronic pain management program. *(Id.)* In January of 2010, Meyer performed range of motion and muscle testing. (Tr. 317.) Based on those findings, Meyer determined Plaintiff was unable to return to full duty at work, and recommended ten additional pain management sessions. (Tr. 321.)

On February 16, 2010, Meyer completed a questionnaire regarding Plaintiff's lumbar spine impairment. (Tr. 390-93.) Meyer opined Plaintiff would be unable to work four days each month. *(Id.)* Meyer also felt she was limited to standing about two hours and sitting about four hours during an eight-hour workday. *(Id.)* He also limited her to occasionally lifting 20 pounds. *(Id.)*

### Plaintiff's Testimony at the Hearing

Plaintiff testified at the administrative hearing on April 26, 2010, on her own behalf. (Tr. 82.) Plaintiff stated that she worked at Terrell State Hospital from 1990 to October of 2008. *(Id.)* Plaintiff testified she could sit or stand for 15 minutes at a time and lift 10 pounds at a time. (Tr. 86.) She also testified she could not pick up objects off the floor or climb stairs. *(Id.)* Plaintiff's pain caused about two "bad days" a week, where she would spend most of her time lying down. (Tr. 87-88.) Plaintiff

testified she could not perform all of her daily household chores, such as sweeping or vacuuming, due to the pain. (Tr. 89-90.) However, Plaintiff testified that she could perform tasks like laundry and washing at a slower pace. *(Id.)*

On cross examination, Plaintiff testified that her treatment included a pain reliever, Tramadol, and physical therapy. (Tr. 91-92.) She also testified that the work hardening program exacerbated her pain. *(Id.)*

### The VE's Testimony at the Hearing

A VE, Mr. Russell B. Dowden, testified at the hearing regarding Plaintiff's past work and jobs available in the national economy. (Tr. 92-97.) The VE testified that Plaintiff had worked as a hospital worker for 18 years from 1990 until October 2008. (Tr. 93.) The VE testified that a hospital cleaner is listed as "unskilled, SVP 2, and light in exertional requirements." *(Id.)* The VE also testified that it would require Plaintiff to be on her feet most of the day and lift frequently in the 10-20 pound range. *(Id.)*

On cross examination, the VE was presented with a series of hypotheticals. (Tr. 93-97.) The first hypothetical concerned an individual who was able to sit or stand for 15 minutes at a time, had limited postural movements, and would miss between two-four days of work per month. (Tr. 93.) The VE testified this individual "would be precluded" from working as a hospital cleaner because she could not stand more than 15 minutes, the designated breaks occur only every two hours, and the "excessive . . . absenteeism" rate of two days or more per month could lead to termination. (Tr. 93-94.) The VE also testified that there are "certainly jobs where a person can alternate between sitting and standing . . . it's just going to preclude competitive employment." (Tr. 94-95.) But, the VE testified that there were no jobs in the national economy where an individual would be allowed to sit

or stand for 15 minutes and then take a break by performing the opposite sit or stand position for five minutes. (Tr. 94.)

A second hypothetical presented an individual who was unable to perform an eight-hour workday. (Tr. 95.) The VE testified that, "by definition," a person who has less than an eight-hour capacity will preclude work. *(Id.)* Likewise, the VE testified that even if an individual could perform at a light level, but was required to take unscheduled breaks every hour for 10 minutes, that would preclude the past relevant work. (Tr. 95-96.)

A third hypothetical presented an individual who was restricted to handling and reaching 50 percent of the time with her right hand. (Tr. 96.) The VE testified that this individual would not be able to perform claimant's past relevant work as a hospital cleaner because it required more than 50 percent handling and reaching. *(Id.)* However, the VE testified that there would be a limited range of jobs available, such as inspection and quality control. (Tr. 96-97.)

A final hypothetical presented an individual with the same restrictions as in the previous hypothetical, except that individual was restricted to sedentary work. (Tr. 97.) The VE testified that this individual would not be able to perform any jobs in the national economy given the claimant's age and educational level. *(Id.)*

## The Decision

The ALJ analyzed Plaintiff's claim pursuant to the familiar five-step sequential evaluation process.[2] Before proceeding to step one, the ALJ determined that Plaintiff met the insured status

---

[2] (1) Is the claimant currently working? (2) Does she have a severe impairment? (3) Does the impairment meet or equal an impairment listed in Appendix 1? (4) Does the impairment prevent her from performing her past relevant work? (5) Does the impairment prevent her from doing any other work? 20 C.F.R. §§ 404.1520, 416.920.

8

requirements of the defined Act through December 31, 2013. (Tr. 71.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of October 10, 2008. *(Id.)* At step two, the ALJ found that the medical evidence established the following severe impairments: Degenerative Disc Disease and Status Post Fusion. *(Id.)* The ALJ cited *Stone v. Heckler*, 707 F.2d 162 (5th Cir. 1983), and stated Plaintiff had "severe impairments by regulatory definition." (Tr. 73.) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *(Id.)*

Before proceeding to step four, the ALJ assessed Plaintiff's RFC. (Tr. 76.) The ALJ found the Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) except for occasional posturals. (Tr. 74.) The ALJ determined that Plaintiff was not precluded by her RFC to perform past relevant work as a hospital cleaner. (Tr. 76.) Hence, the ALJ did not need to reach step five, and concluded Plaintiff was not disabled within the meaning of the Act for the relevant time period.[3] *(Id.)*

## Standard of Review

To be entitled to social security benefits, a plaintiff must prove that she is disabled for the purpose of the Social Security Act. *Leggett v. Chater*, 67 F.3d 558, 563–64 (5th Cir. 1995); *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The Social Security Act defines disability as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical

---

[3]The relevant time period is Plaintiff's alleged onset date, October 10, 2008, through the date of the decision, September 13, 2010.

9

or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled. Those steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work the individual has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes her from performing her past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)). Under the first four steps of the inquiry, the burden lies with the claimant to prove her disability. *Leggett*, 67 F.3d at 564. The inquiry terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* Once the claimant satisfies her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

The Commissioner's determination is afforded great deference. *Leggett*, 67 F.3d at 564. Judicial review of the Commissioner's findings is limited to whether the decision to deny benefits is supported by substantial evidence and to whether the proper legal standard was utilized. *Greenspan*, 38 F.3d at 236; 42 U.S.C.A. § 405(g). Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564. The reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment. *Greenspan*, 38 F.3d at 236. Rather, the court scrutinizes the record to determine whether substantial evidence is present. *Id.*

## Issues

1. Whether the ALJ erred at step three and if so, whether it was prejudicial.

2. Whether the ALJ's RFC formulation and Plaintiff's credibility determination were supported by substantial evidence.

## Analysis

Plaintiff alleges that the ALJ's decision to deny benefits was reversible error. Pl.'s Br. at 18. Judicial review of the Commissioner's findings is limited to whether the proper legal standard was utilized and to whether the decision to deny benefits is supported by substantial evidence. 42 U.S.C.A. § 405(g); *Greenspan*, 38 F.3d at 236. Plaintiff alleges that the Commissioner's failure to apply the proper legal standard at step three was prejudicial error. Pl.'s Br. at 12, 18. Additionally, Plaintiff alleges that the ALJ's step four decision to deny benefits was not supported by substantial evidence. *Id.*

### Step Three Determination

Plaintiff contends that the ALJ did not make specific step three findings regarding the Listing,

11

and that this error "casts into doubt the existence of substantial evidence to support the ALJ's decision." *Id.* It remains uncontested that the ALJ's failure to provide explanation for his step three finding did constitute legal error. Def.'s Resp. Br. at 5. However, even if there is procedural error, the Court need not remand the case unless "the substantial rights of a party have [] been affected." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). The ALJ's step three finding that "the Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 does not affect the Plaintiff's substantial rights so as to constitute prejudicial legal error. (Tr. 73.)

The Commissioner contends that Plaintiff failed to meet her burden of proof to show that her impairment meets or equals the criteria of a listed impairment, rendering the ALJ's error harmless. Def.'s Resp. Br. at 5. To meet the criteria of Appendix 1 Listing 1.04(A) for a disorder of the spine, Plaintiff must show:

> 1.04 Disorders of the spine, . . . resulting in compromise of a nerve root . . . or the spinal cord. With:
>
> A. Evidence of a nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight leg-raising test.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04(A).

Plaintiff's medical evidence did not show that she suffered from motor loss accompanied by sensory or reflex loss. Plaintiff's chiropractor, Dr. Meyer, did observe continued muscle weakness, abnormal gait, and reflex changes. (Tr. 391.) However, as noted by the ALJ, under 20 C.F.R. § 404.1513(d)(1), evidence from a chiropractor may be considered in determining the severity of an impairment and how it affects Plaintiff's ability to work, but is not an acceptable medical source's opinion and is not assigned the weight of an opinion from a physician such as Dr. Cremona. (Tr. 73.)

Plaintiff relies primarily on Dr. Meyer's opinion in showing continued motor loss for 12 months after her surgery, rather than the opinion of a medical doctor, and therefore fails to meet her burden to show that her impairment medically meets or equals a Listing.

While Plaintiff contends that the ALJ's findings relied too much on the assessment of a non-examining expert, Dr. Cremona, this Court agrees with the Commissioner that Dr. Cremona's assessment is consistent with the evidence of record. Pl.'s Br. at 12-13. Specifically, Dr. Cremona determined that Plaintiff was "not expected to be disabl[ed] for more than 12 months." (Tr. 293.) Dr. Cremona also determined that Plaintiff's impairment was not of Listing level severity. *(Id.)*

Plaintiff contends Dr. Cremona's determinations are not supported by medical evidence. Pl.'s Br. at 13. To the contrary, the Court finds Dr. Cremona's determinations are consistent with the evidence provided by other physicians deemed credible by Plaintiff. First, Dr. Cremona's determinations are consistent with what Plaintiff's treating physician, Dr. Ramnath, stated in his progress reports. On May 15, 2009, Plaintiff's last visit to Dr. Ramnath, he noted only "minor" discomfort in Plaintiff's paralumbar region, and Plaintiff was neurovascularly intact. (Tr. 303.) Further support for Dr. Cremona's assessment comes from Dr. Ukoha's consultative examination on August 4, 2009, which showed that Plaintiff was not experiencing neurological deficits. (Tr. 306-07.) Finally, over seven months after Plaintiff's surgery, Dr. McCary, the medical consultant, concluded that Plaintiff was improving and had the RFC for light work. (Tr. 308-15.)

Thus, the ALJ's error was not prejudicial. Plaintiff's rights were not substantially affected because Plaintiff failed to meet her burden of proof to provide medical evidence showing that her impairment meets or equals the criteria of a listed impairment. Giving the deference that is due, the Court affirms the Commissioner's decision.

## RFC Determination

Second, Plaintiff contends that the ALJ's decision to deny benefits is not supported by substantial evidence. Pl.'s Br. at 12, 18. Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564. The reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. To make a finding of "no substantial evidence," the court must conclude that there is a "conspicuous absence of credible choice" or "no contrary medical evidence." *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir. 1983) (quoting *Hemphill v. Weinberger*, 483 F.2d 1137 (5th Cir. 1973)). Even if the court should determine that the evidence preponderates in the claimant's favor, the court must still affirm the Commissioner's findings if there is substantial evidence to support these findings. *See Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir. 1985).

The ALJ determined Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) except for occasional posturals. (Tr. 74.) Specifically, relying heavily on Dr. Cremona's assessment, the ALJ determined Plaintiff is susceptible to exertional limitations of lifting 20 pounds occasionally, 10 pounds frequently, standing and walking six hours in an eight-hour workday, and sitting for total of about six hours in an eight-hour workday. (Tr. 289.) Additionally, Plaintiff's postural limitations are limited to occasional climbing on ladders, ropes, and scaffolds, occasional stooping and crouching, frequent climbing ramps and stairs, frequent balancing, frequent kneeling, and frequent crawling. (Tr. 290.)

Plaintiff first urges that the significant weight given to Dr. Cremona's opinion is not supported

by substantial medical evidence of record, and more weight should have been given to Meyer's opinion. Pl.'s Br. at 18. As explained previously, a chiropractor's opinion is not given the same weight as the opinion of a medical doctor. (Tr. 73); 20 C.F.R. § 404.1513(d)(1). Given that this Court finds Dr. Cremona's assessment in accord with the medical evidence, Plaintiff's argument fails.

Regarding Plaintiff's credibility, she argues that the ALJ's "insufficiently specific" consideration of the subjective factors provided by statute creates reversible error. Pl.'s Br. at 18. In making an RFC determination, the ALJ must first determine that an impairment exists that could reasonably be expected to produce Plaintiff's pain. SSR 96-7p. Only then must the ALJ consider the severity of the impairment. *Id.* Notably, an ALJ is not required to explain all of his reasoning in detail. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). The ALJ's findings only need to be specific enough to make clear to the individual and subsequent reviewers the weight given to the individual's statements and the reason for the weight given. SSR 96-7p. Also, an ALJ must consider subjective factors[4] that may convey the severity of an impairment already supported by objective medical evidence. 20 C.F.R. §§ 401.1529(c), 416.929(c). However, the subjective evidence must be supported by something more than Plaintiff's "lay intuition as to the causes and symptoms." *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003).

The ALJ did consider these subjective factors in making his RFC determination when he

---

[4]When determining the credibility of the claimant's statements, the ALJ must consider: 1) the claimant's daily activities; 2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the claimant uses or has used to relieve pain or other symptoms; 7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. SSR 96-7p.

noted that Plaintiff described her pain and symptoms at the administrative hearing. (Tr. at 75.) The ALJ considered Plaintiff's testimony of pain she estimated as 7 on a ten-point scale. *(Id.)* The ALJ also noted that Plaintiff stated she could not climb stairs, kneel, or bend to the ground. *(Id.)* Additionally, the ALJ acknowledged Plaintiff's testimony that she could only walk one block and lift no more than 10 pounds. *(Id.)*

However, Plaintiff's description of her symptoms was not supported by the objective medical evidence. Contrary to Plaintiff's testimony, Dr. Meyer noted that she could occasionally lift up to 20 pounds, and could occasionally bend and climb stairs. (Tr. 309-10.) Additionally, Dr. Cremona noted that she could occasionally lift up to 20 pounds, occasionally stoop and crouch, but could frequently kneel and climb stairs. (Tr. 289-90.) As discussed above, Dr. Cremona's assessment was correctly given "significant weight" in this matter. (Tr. at 76.) The ALJ provided sufficient specificity to create a logical bridge between his reasoning and his determination that Plaintiff was not disabled by acknowledging Plaintiff's testimony as to her pain, acknowledging Meyer's assessment, and clarifying why he relied most heavily on Dr. Cremona's medical assessment. The ALJ's decision that Plaintiff is not disabled is supported by substantial evidence. Even though the ALJ recognized that Plaintiff's back injury was a medically determinable physical impairment, the medical evidence showed that the back injury could not reasonably be expected to cause the work-prohibiting pain alleged by Plaintiff. (Tr. 74, 76). As such, the ALJ's opinion that Plaintiff had the RFC to perform light work is supported by substantial evidence. (Tr. 74, 293).

## Conclusion

This Court AFFIRMS the final decision of the Commissioner because the Commissioner did not commit prejudicial legal error and the decision is supported by substantial evidence.

It is therefore ORDERED, ADJUDGED AND DECREED that the Commissioner's decision is AFFIRMED.

SO ORDERED, September 27, 2012.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE